UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  Case No. 8:21-cr-262-KKM-SPF

DEMETRIUS LAMAR RAHMINGS
_____

ORDER

Defendant Demetrius Lamar Rahmings moves to suppress "all evidence obtained in this case during and after the illegal seizure and search of [his] backpack on October 8, 2020," including a Taurus G2C 9mm firearm with an extended magazine, accompanying ammunition, and the statements that he made while in custody. Mot. to Suppress (Doc. 53) at 1. On October 8, 2020, the Tampa Police Department executed a warrant for Rahmings's arrest at a residence on Lincoln Avenue. When officers approached to arrest him, he fled into the house and cast off a backpack he was wearing in the hallway before running into a bedroom. After he surrendered to police, officers conducted a protective sweep of the house during which they searched the backpack and found the gun and ammunition. Officers took Rahmings into custody where he later made incriminating statements.

Rahmings argues that the arresting officers' protective sweep after his arrest was "unnecessary and unreasonable," and Rahmings had an expectation of privacy in his

backpack. Mot. to Suppress at 3–4. The government responds that Rahmings (1) does not have standing to object to the search of a bag he left in someone else's house and (2) abandoned the backpack regardless. Resp. in Opp'n to Def.'s Mot. to Suppress (Doc. 60). Applying a common-sense approach to the evidence presented, Rahmings voluntarily abandoned his backpack while fleeing law enforcement. Thus, his motion to suppress is denied.

## I. FINDINGS OF FACT

On October 8, 2020, a team of the U.S. Marshals Service Fugitive Apprehension Unit and Tampa Police Department waited outside a house on Lincoln Avenue in Tampa to execute a warrant for Rahmings's arrest for multiple state felony offenses. The house is known to law enforcement as a hotspot for gang activity and is not Rahmings's residence. Around 7:00 p.m., the officers saw a person matching Rahmings's description get out of a car and approach the house wearing a white USF backpack. Officers confirmed it was Rahmings and moved in with lights and sirens. Upon the officers' approach, Rahmings ran into the house. A team of officers then formed a "stack" that entered the house through the front door and searched for Rahmings room by room, while another team covered the house's rear exit. Within one minute of the officers' approach, Rahmings walked out of a bedroom connected to the rest of the house by a hallway with his hands up. Officers placed

him under arrest and escorted him outside to a police car. At the time of his arrest, Rahmings was no longer wearing the backpack.

After Rahmings was placed under arrest, Sergeant Lippold of the Tampa Police Department spoke to the homeowner and asked if the officers could conduct a protective sweep of the home to check for any armed individuals. The homeowner consented to the sweep and emphasized that she did not want guns in the house because of her children. During the sweep, Detective O'Neal found the white USF backpack he had seen Rahmings wearing before his arrest. He located the backpack in the hallway 10 to 15 feet from the doorway where Rahmings surrendered. Detective O'Neal immediately took the backpack outside and opened it, finding the gun and ammunition.

After consenting to the protective sweep, the homeowner requested to speak to Rahmings. By this time, officers had already recovered a backpack that matched the bag Rahmings had entered the residence wearing. Detective O'Neal had taken the bag outside, where Rahmings was watching from a squad car, and opened the backpack to find the gun. Sergeant Lippold accompanied the homeowner outside to the police car where Rahmings was handcuffed, and he heard the homeowner ask Rahmings if he had left anything in the house. Rahmings offered no verbal response but looked down. Sergeant Lippold then asked Rahmings if a white iPhone that the Sergeant had found on the ground was his. Rahmings responded in the affirmative.

## II. Legal Standards

When challenging a search or seizure, a defendant bears the burden of proving standing by showing that he had a reasonable expectation of privacy in the searched item. *Rakas v. Illinois*, 439 U.S. 128, 130 n.1 (1978). Although "an overnight guest in a home may claim the protection of the Fourth Amendment," "one who is merely present with the consent of the householder may not." *Minnesota v. Carter*, 525 U.S. 83, 90 (1998).

"[T]here [is] no seizure in the sense of the law" when law enforcement examines abandoned property. *Hester v. United States*, 265 U.S. 57, 58 (1924). Thus, if Rahmings abandoned his backpack, he had no reasonable expectation of privacy in its contents regardless of whether the search and seizure was reasonable. The government has the burden of proving abandonment. *United States v. Freire*, 710 F.2d 1515, 1519 (11th Cir. 1983). "[T]he critical inquiry" in the abandonment analysis "is whether the person prejudiced by the search voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." *United States v. Ramos*, 12 F.3d 1019, 1022 (11th Cir. 1994) (internal quotations, alterations, and emphasis omitted).

The Court must determine if the defendant abandoned property by using "an objective, common-sense approach" that focuses on "whether the prior possessor

'voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question' in light of his 'statements, acts and other facts.' " *United States v. Green*, 981 F.3d 945, 956 (11th Cir. 2020) (quoting *United States v. Sparks*, 806 F.3d 1323, 1342 (11th Cir. 2015), *overruled in part on other grounds by United States v. Ross*, 963 F.3d 1056 (11th Cir. 2020)). The fact that a defendant casts off property during a police pursuit does not—by itself—change the abandonment analysis. *See Sparks*, 806 F.3d at 1342; *United States v. Pirolli*, 673 F.2d 1200, 1204 (11th Cir. 1982) ("The fact that [defendant] abandoned the articles in an effort to evade his being caught with them does not amount to his abandonment being the product of police misconduct.").

### III. ANALYSIS

Rahmings argues that the Court must exclude the items found in the backpack and Rahmings's custodial statements because the protective sweep was unreasonable and Rahmings had a reasonable expectation of privacy in the backpack. Mot. to Suppress at 3–4. The government responds that Rahmings has no standing to challenge the search and that he abandoned the backpack. Resp. in Opp'n at 4–5.

The Court heard testimony at the suppression hearing that Rahmings "rushed," "ran," "stormed," or "fled" into the house upon the police approaching with sirens. As the officers testified, the house was a known gang location, and officers had a warrant for Rahmings's arrest for state charges. As officers approached the house, the circumstances

were "intense" because individuals known to the police were yelling at the officers and recording them as they entered. When Detective O'Nolan found the backpack, it was lying on the floor in the hallway in an area where Rahmings must have passed to enter the bedroom from which he emerged when surrendering.

It is clear from these circumstances that Rahmings was fleeing arrest and attempting to distance himself from the backpack by casting it off in the hallway. A hallway is not a usual location to store items—and officers testified it appeared slung on the floor—and there is no indication that Rahmings had permission to store his personal belongings there. In fact, Sergeant Lippold testified to the contrary: the homeowner consented to the protective sweep because she did not want guns in the house. The homeowner further indicated that she had not given Rahmings permission to store his backpack in the hallway when she asked him if he had left anything behind. Rahmings's silence in response provides further evidence of his intent to distance himself from the backpack, particularly when compared to his response to a subsequent question about whether the iPhone found belonged to him.

Using the "objective, common-sense approach" that the Court is required to employ in the abandonment inquiry, the Court concludes that Rahmings abandoned the backpack. *Green*, 981 F.3d at 956. Rahmings "voluntarily discarded, left behind, or otherwise relinquished his interest" in the backpack when he cast it off in the hallway while running

from police. *Ramos*, 12 F.3d at 1022 (emphasis omitted). That he was fleeing from arrest only enhances this conclusion, as his actions indicated an attempt to rid himself of incriminating evidence. He further indicated his intent to abandon the backpack when he failed to respond to the homeowner's inquiry about any items he may have left in the house.

To the extent that Rahmings objects to the scope of the protective sweep, this argument is unavailing. Officers may have exceeded the scope of the homeowner's consent by searching a container in the house instead of searching for armed individuals as they discussed with the homeowner. But because Rahmings is not the homeowner and there is no indication he was an overnight guest in the home, Rahmings lacks standing to object to the protective sweep. *See Carter*, 525 U.S. at 90; *Ramos*, 12 F.3d at 1022–23.

Accordingly, Defendant's Motion to Suppress (Doc. 53) is **DENIED**.

**ORDERED** in Tampa, Florida, on April 10, 2023.

Kathryn Kimball Mizelle
United States District Judge